UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLIVIA THOMPSON,

    Plaintiff,

v.

PANOS X FOODS, INC.
d/b/a Red Olive X,

    Defendant.
_____/

Case No. 14-10620

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 70)

Plaintiff, a server at the Panos X Foods restaurant, alleges in this action that she suffered a hostile work environment and was fired in retaliation for complaining about sexual harassment by a customer of the restaurant. In this motion for partial summary judgment, Defendant seeks dismissal of Plaintiff's Title VII retaliation claim. Having considered the Defendant's motion and supporting brief (ECF No. 70) and the Plaintiff's response (ECF No. 77), and having held a hearing on the motion on April 20, 2016, the Court DENIES Defendant's motion.

**INTRODUCTION**

This action involves Plaintiff's claim that her employer permitted a hostile work environment to exist at the restaurant where Plaintiff worked as a server, ignoring Plaintiff's repeated complaints about sexual harassment by a frequent customer. In this motion, Defendant Panos X, seeks a summary judgment finding that Plaintiff has failed to state a prima facie case of retaliation because she cannot establish that Defendant had notice of her Equal Employment Opportunity Commission

1

("EEOC") complaint prior to firing her.[1] Plaintiff responds that the filing of her EEOC Complaint is not the basis for her retaliation claim and that Defendant had notice of her complaints of harassment, and had knowledge of her intent to file a claim with the EEOC, prior to her termination. For the reasons that follow, the Court DENIES Defendant's motion.

## I. BACKGROUND

Panos X is a Michigan corporation that conducts business under the assumed name of Red Olive. ECF No. 70, Def.'s Mot. 2, ¶¶ 2-3. Plaintiff began working as a server at the Red Olive restaurant operated by Panos X in St. Clair Shores, Michigan in January, 2013. (ECF No. 77, Pl.'s Resp. Ex. 1, June 4, 2014 Deposition of Olivia Thompson 28.) Plaintiff did not fill out an employment application for the position. She walked into the restaurant and was offered the job by Panagiotis "Pete" Goulas ("Goulas"). *Id*. at 45.

Between March and August, 2013, Plaintiff complained on several occasions to Miri Florjan, her direct supervisor and a cook at Red Olive, that she was being sexually harassed by a customer named "Lee." Thompson Dep. 58-60. Plaintiff was 32 at the time of the alleged harassment and Plaintiff imagined Lee was in his "late 60's, maybe early 70's." Thompson Dep. 6, 50. Lee had been a persistent problem for Plaintiff at her previous employer, Charlie's Restaurant, where she also worked as a server. *Id*. at 28. When Lee would patronize Charlie's, he would make comments

---

[1] In an initial summary judgment motion (ECF No. 66) that has since been withdrawn (ECF No. 75, Notice of Withdrawal of Motion), Defendants Red Olive Company and Panos X sought dismissal of Defendant Red Olive, arguing that Red Olive Company and Panos X are separate and distinct Michigan corporations and asserting that Red Olive was never Plaintiff's employer. That motion has been withdrawn and Plaintiff has dismissed Defendant Red Olive Company from this action with prejudice. (ECF No. 74, Plaintiff's Dismissal of Defendant Red Olive Company.) Subsequently, this Court entered an Order of Dismissal of Red Olive Company. (ECF No. 75.) Thus, the case proceeds on Plaintiff's claims of sexual harassment and retaliation against Defendant Panos X only.

to Plaintiff that she "had a great body" and that he would like to "physically please [her]." *Id*. at 32-33. He would also bring cards and flowers to Plaintiff at the restaurant and would at times leave money in the cards. *Id*. at 33-34. Once or twice at Charlie's, Lee touched Plaintiff on her behind and once held her hand. *Id*. at 35-36. Plaintiff reported these incidents, which bothered her, to her former supervisor who would tell Lee that it was inappropriate and that if he couldn't control himself he would be asked to leave and not return. *Id*. at 37.

When Lee began coming into Red Olive and sitting in Plaintiff's section he was initially cordial and friendly. *Id*. at 39-40, 49. Plaintiff tried to be friendly and "let bygones by bygones," and would give Lee a hug when he came into the restaurant. *Id*. at 63. After about a month, Lee started with the same behavior he exhibited at Charlie's, and began bringing Plaintiff cards and flowers and telling her he was in love with her and that it was "torture" to see her and not "have her." *Id*. at 49. Lee started touching Plaintiff and grabbed her hand "maybe five or six times," and asked for her phone number. *Id*. at 49-50. Plaintiff had given Lee her phone number when Lee first started coming in to Charlie's because Lee told her that he had just gotten out of the hospital and had no family or friends and needed to give the hospital an emergency contact number. *Id*. at 80-81. Plaintiff also went to Lee's apartment after she first met him at Charlie's to do some light house cleaning for Lee, who had just gotten out of the hospital and needed help with the housework. *Id*. at 80-81.

In March, 2013, Plaintiff complained to Miri Florjan, her direct supervisor and the cook at Red Olive, about Lee's conduct and in response Miri laughed and walked away. *Id*. at 58-59. In July, 2013, Plaintiff complained to Miri again, explaining that Lee was touching her and grabbing her and that his actions were unwelcome. *Id*. at 59-60. Miri told her he was not going to do

3

anything about it and that if she didn't like it she should go get another job. *Id*. at 60. Miri started to cut Plaintiff's hours and treat her rudely. *Id*. at 48. On July 9, 2013, Lee came up from behind Plaintiff in the restaurant, bit her neck and then kissed it. *Id*. at 64. Plaintiff jumped back and told Lee that his behavior was unacceptable. *Id.* at 64-65. Miri and several other servers witnessed this and were sitting in a booth laughing. *Id*. at 65-66. Plaintiff was unhappy and felt that it was "gross," and went to the bathroom to wash her neck. *Id*. at 67-68.

Because she was getting no response from Miri, Plaintiff tried to contact Pete Goulas, whom she believed to be the owner of Red Olive. *Id*. at 60. On July 19, 2013, she spoke to Dillip KC, a part owner of the restaurant along with Pete Goulas, and told KC that she was tired of being harassed by Lee and that she did not feel this was a good work environment and that something needed to be done. *Id*. at 61. She asked that Miri take action against Lee. *Id.* Plaintiff ultimately reached Pete and complained to Pete that her hours were being cut. Pete came into the restaurant to meet with her to discuss both her complaints, and complaints that were being made by others about Plaintiff's behavior. *Id*. at 62. Plaintiff asserts that Miri was well aware that she was being sexually harassed by Lee and chose to do nothing about it. *Id*. at 115-16. Instead, Miri belittled her and called her names. Plaintiff felt that Miri was her boss and should have protected her from being sexually harassed. *Id.* She warned him that she was getting a lawyer and would file a civil rights complaint and still Red Olive did nothing about Lee's behavior. *Id*. at 116-17. At some point shortly before she was fired, Pete Goulas called Plaintiff to tell her that if she didn't change her ways, she was going to be fired. *Id.* at 123.

The last time Plaintiff spoke to Lee was on August 1, 2013, the last day she worked at Red Olive. *Id*. at 81. Lee had been at the restaurant and when he left Plaintiff drove to his apartment to

4

tell him that he was ridiculous, that she was going to file charges and that his behavior was going to cost her her job. *Id*. at 81-82. In fact, Plaintiff did lose her job and was permanently thereafter taken off the schedule at the restaurant. *Id*. at 82. Plaintiff suffers from depression and anxiety as a result of these incidents and the loss of her job and has been unable to find employment since being let go from Red Olive. *Id*. at 85-86.

Plaintiff was terminated on August 1, 2013. Def.'s Mot. Ex. L, Charge of Discrimination. Plaintiff contacted the Michigan Department of Civil Rights ("MDCR") about filing a complaint on or about July 19, 2013 and filed a formal complaint with the MDCR on or about September 8, 2013. Pl.'s Dep. 140; Def.'s Mot. Ex. L. On February 6, 2014, Plaintiff received her Notice of Right to Sue from the EEOC. Compl. ¶ 6. Plaintiff filed her Complaint in this Court against Red Olive Company and against several Panos Foods Inc. entities, each DBA Red Olive, on February 10, 2014. On March 13, 2014, Plaintiff filed her Amended Complaint, which named only Red Olive Company and Panos X, the entity doing business as Red Olive X. ECF No. 4, Amended Complaint. Red Olive Company has now been dismissed from the action with prejudice and Plaintiff continues with her claims of sexual harassment and retaliation against Panos X.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it

should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-34.

### III.    ANALYSIS

In order to establish a prime facie case of retaliation under Title VII, the Plaintiff must establish that she: "(1) engaged in activity protected by Title VII; (2) the defendant knew of their protected activity; (3) thereafter, the defendant took adverse action against the claimants; and (4) a causal connection existed between the protected activity and the materially adverse action." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015).

Defendant argues in its motion for partial summary judgment that it is undisputed that Plaintiff was fired on August 1, 2013 and that Defendant did not receive notice of the filing of Plaintiff's EEOC complaint until some time in September, 2013. Hence, Defendant argues, it could not possibly have known of Plaintiff's protected activity, i.e. the filing of an EEOC complaint, at the time of her termination.

Defendant either misconstrues or mischaracterizes the factual basis for Plaintiff's retaliation claim. Plaintiff's retaliation claim is based upon the change to her schedule and her ultimate termination, all of which occurred after she had complained on multiple occasions to her direct supervisor, Miri Florjan, prior to her termination, about Lee's sexually harassing conduct and threatened to file a complaint if her employer refused to address the situation. Plaintiff alleges that she was engaged in protected conduct (complaining to her supervisor about sexual harassment by a customer and threatening to file a complaint) and that her hours were cut and she ultimately was terminated in retaliation for engaging in that protected conduct. Accepting the truth of these facts, which the Court must do on summary judgment, the fact that Defendant only received notice of her

EEOC filing after the termination is irrelevant as this is not the protected conduct on which Plaintiff bases her claims.

It is clear that a Title VII retaliation claim may be based upon "the unofficial assertion rights through complaints at work." *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992). *See also Lester v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) ("The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices."). Based on Plaintiff's complaints regarding Lee's sexually offensive conduct, which according to Plaintiff her employer failed to address, Defendant should have known that Plaintiff was opposing a perceived discriminatory employment practice. *See Harrell v. Delaware North Companies*, No. 11-15557, 2014 WL 4705109, at *10 (E.D. Mich. Sept. 21, 2014) (holding that plaintiff's statements that she complained verbally to management of her sexually offensive work environment on several occasions were sufficient "evidence to create a genuine issue of a material fact to be resolved by the jury as to whether her superiors were on notice of her protected activity.").

Defendant asserts that Plaintiff invited Lee's attentions and also asserts that it did respond to Plaintiff's complaints by seating the offending customer in sections that Plaintiff was not assigned to serve. These assertions of course only demonstrate disputed issues of fact on matters unrelated to the notice issue that is the subject of Defendant's motion. Such factual disputes do not demonstrate an absence of a genuine issue of material fact regarding Defendant's knowledge of Plaintiff's protected activity (her complaints to management regarding Lee's allegedly harassing conduct) prior to her termination.

Viewing the facts in the light most favorable to the Plaintiff, as the Court must do on

9

summary judgment, prior to her termination she complained to her supervisor about Lee's conduct and threatened to file a complaint if Defendant refused to address the situation. Again, according to Plaintiff, Defendant ignored her complaints about Lee and refused to take action to protect her from the harassment. Plaintiff's testimony creates a genuine issue of material fact regarding the timing of Defendant's knowledge of Plaintiff's protected activity, which is the only issue raised in Defendant's motion for partial summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for partial summary judgment.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 22, 2016

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 22, 2016.

s/Deborah Tofil
Case Manager